IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

VALERIE LACEY and
RY'KIA LACEY                                                              PLAINTIFFS

v.                              Case No. 2:16-cv-00016 KGB

NORAC, INC., d/b/a
NORAC ADDITIVES                                                            DEFENDANT

**OPINION AND ORDER**

Plaintiffs Valerie Lacey and Ry'Kia Lacey bring this action against defendant Norac, Inc., d/b/a Norac Additives ("Norac") and allege retaliation claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq*.  Before the Court are Norac's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 15) and plaintiffs' motion to strike an exhibit to Norac's motion for summary judgment (Dkt. No. 22).  Plaintiffs timely responded to Norac's motion for summary judgment (Dkt. No. 21), and Norac filed a timely reply (Dkt. No. 23).  Norac also timely responded to plaintiffs' motion to strike (Dkt. No. 24). After reviewing the materials submitted by both parties, the motion to strike is denied (Dkt. No. 22).  The Court grants Norac's motion for summary judgment on Ms. Valerie Lacey and Ms. Ry'Kia Lacey's claims (Dkt. No. 15).

**I.  Factual Background**

Unless otherwise noted, the following facts are taken from Norac's statement of facts (Dkt. No. 17) and plaintiffs' response to Norac's statement of facts (Dkt. No. 20).

Norac manufactures chemical additives for certain plastic products (*Id*., ¶ 3).  Its headquarters is in California, and it operates a plant in Helena, Arkansas (*Id*.).  Plaintiff Valerie

Lacey, who is an African American female, is a former Norac employee (*Id.*, ¶ 4). She worked for Norac from April 2014 until December 2, 2014, at the Helena plant (*Id.*). Plaintiff Ry'Kia Lacey, who is an African American female, is a former temporary worker assigned by a staffing agency to work at Norac's Helena plant in 2014 (*Id.*, ¶ 5). She is also Ms. Valerie Lacey's daughter (*Id.*). Ms. Ry'Kia Lacey was assigned to work as the receptionist for Norac (*Id.*).

Norac contends that, in September 2014, it decided it wanted to reorganize the front office at its Helena plant, transfer some job duties back to California, and lay off three Norac employees and end the assignment of a temporary worker (*Id.*, ¶ 6). Norac asserts that, in September 2014, it selected Kesheanna Jackson, Ms. Valerie Lacey, and Danielle Rose, who is a Caucasian employee, as the three Norac employees to lay off (*Id.*). Norac terminated Ms. Jackson, Ms. Valerie Lacey, and Ms. Rose on December 2, 2014 (Dkt. No. 17, ¶ 9.). As a result, Ms. Jackson filed a lawsuit against Norac, *Kesheanna Jackson v. Norac, Inc.*, No. 2:15-cv-00125-DPM ("the *Jackson* lawsuit") (Dkt. No. 17, ¶ 2). In the *Jackson* lawsuit, Ms. Jackson, who is an African-American female, amended her complaint and alleged that her December 2, 2014, termination was in retaliation for a previous Equal Employment Opportunity Commission Charge ("EEOC") (*Id.*). District Court Judge D.P. Marshall granted Norac's motion for summary judgment in the *Jackson* case, and the Eighth Circuit Court of Appeals affirmed. *Jackson v. Norac, Inc.*, 685 Fed. App'x. 510 (8th Cir. 2010).

As proof that it decided to lay off these employees in September 2014, Norac attaches Exhibits 5-B, 5-C, and 5-D to its motion for summary judgment (Dkt. Nos. 15-5, at 3-5). Exhibits 5-B and 5-C are memos putatively authored by Norac's owner, Wally McCloskey, on September 18, 2014, which state in pertinent part that "[Norac] will move most . . . accounting activities that are handled in Helena . . . to California," and that the "duties that will remain in the Helena office

2

would best be performed by Wendy, Pam, and Kristen . . . ." (Dkt. No. 15-5, at 3-4). Norac also submitted Exhibit 5-D, an undated document which allegedly shows that Ms. Valerie Lacey's position was assigned to Pam Payne, Norac's office manager (*Id*., at 5). Norac states that, during the lawsuit filed by former employee Ms. Jackson, , Exhibits 5-B, 5-C, and 5-D were produced to Ms. Jackson's counsel, Robert Kinchen, who also represents plaintiffs in this case (*Id*., ¶ 10). Norac further argues that the same exhibits were provided to the EEOC in response to the separate EEOC charges filed by plaintiffs (*Id*.).

In further support of its motion for summary judgment, Norac submits an email, dated September 21, 2014, marked as Exhibit 9, between Mr. McCloskey and Norac's counsel allegedly contemplating Ms. Valerie Lacey's layoff (Dkt. No. 15-9). Plaintiffs disagree with Norac's proffered timeline, pointing out that Exhibits 5-C and 5-D are undated (Dkt. No. 20, at 4). They also object to Exhibit 9 and ask that the Court not consider it because Norac allegedly did not produce it during discovery (Dkt. No. 20, at 2-3).

In October 2014, Ms. Jackson filed her lawsuit against Norac alleging race and gender discrimination and harassment under Title VII and the ACRA (Dkt. No. 17, ¶ 7). Norac contends that, "[i]n November 2014, Norac decided to interview, through its counsel, employees who might be witnesses in the *Jackson* lawsuit (*Id*., ¶ 8). Norac alleges that it interviewed Ms. Valerie Lacey, Ms. Rose, Ms. Payne who is an African American female, Kristen Gregory who is a Caucasian female, and Wendy Fletcher who is a Caucasian female (*Id*.). Subsequently, Norac supposedly drafted affidavits and presented the draft affidavits to the employees to review and sign (*Id*.). Norac avers that Ms. Rose, Ms. Gregory, and Ms. Fletcher signed their affidavits, making few or no changes (*Id*.; Dkt. Nos. 15-6, 15-7, 15-8). Norac also claims that Ms. Valerie Lacey and Ms. Payne did not sign their affidavits (Dkt. No. 17, ¶ 8). According to Norac, Ms. Valerie Lacey

3

edited her draft affidavit by hand, but Norac did not follow-up with her (*Id*.; *see* Dkt. No. 15-5, at 16-18). Plaintiffs disagree, contending that, "Norac scheduled a follow-up meeting with [Ms. Valerie] Lacey after she edited the affidavit." (Dkt. No. 20, at 3). Ms. Valerie Lacey asserts that she refused to attend the final meeting with Norac's attorney alone and insisted that Ms. Payne sit in with her (*Id*.). Furthermore, plaintiffs claim that Ms. Payne observed that Norac's attorney was upset that Ms. Valerie Lacey did not sign the proposed affidavit (*Id*.). Ms. Valerie Lacey never signed an affidavit.

On December 2, 2014, Norac announced its decision to lay off Ms. Jackson, Ms. Valerie Lacey, and Ms. Rose, as well as its decision to end Ms. Ry'Kia Lacey's temporary assignment (Dkt. No. 17, ¶ 9). Ms. Valerie Lacey and Ms. Ry'Kia Lacey both filed charges with the EEOC (Dkt. No. 15-5, at 1, 14). Ms. Valerie Lacey claims that she was fired for refusing to sign the affidavit related to Ms. Jackson's lawsuit, and Ms. Ry'Kia Lacey contends that she was fired for her relationship with Ms. Valerie Lacey (*Id*.). They filed the present complaint on January 27, 2016 (Dkt. No. 1).

## II. Motion to Strike

Before discussing the motion for summary judgment, the Court must first address the pending motion to strike filed by Ms. Valerie Lacey and Ms. Ry'Kia Lacey (Dkt. No. 22). Plaintiffs argue that Exhibit 9 to Norac's motion for summary judgment (Dkt. No. 15-9) should be struck from the record and excluded from consideration in this case.[1] Specifically, Ms. Valerie Lacey and Mr. Ry'Kia Lacey point out that Exhibit 9 was not produced as part of Norac's initial disclosures, nor did Norac produce Exhibit 9 in response to plaintiffs' interrogatories and requests for production (Dkt. No. 22, ¶ 3). Rather, according to plaintiffs, Norac first produced Exhibit 9

---

[1] Exhibit 9 is an email from Norac's counsel to Norac's owner (Dkt. No. 15-9).

4

as an attachment to the motion for summary judgment (*Id.*, ¶ 1). Plaintiffs argue that this last-minute production violates Federal Rule of Civil Procedure 26, and therefore Exhibit 9 should be struck from the record. In response, Norac contends that it introduced Exhibit 9 to counter plaintiffs' argument, made during a February 14, 2017, deposition, that Norac's other documents were falsified (Dkt. No. 24, ¶¶ 1-2). Norac also argues that Exhibit 9 "conclusively proves" that Ms. Valerie Lacey and Ms. Ry'Kia Lacey were not retaliated against (*Id.*, ¶ 4). Norac contends that its late disclosure is harmless to plaintiffs (*Id.*).

Under the Federal Rules of Civil Procedure, each party must "supplement or correct its disclosure or response . . . in a timely manner . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ." Fed. R. Civ. P. 26(e)(1)(A). In the event a party fails to supplement its discovery responses, "the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court extended the discovery deadline in this case to February 22, 2017, at the request of the parties (Dkt. No. 14). By Norac's own admission, plaintiffs' allegation of falsified documents was made during a February 14, 2017, deposition. Norac could have supplemented its production with Exhibit 9 before the discovery deadline.

However, the Court will not strike Exhibit 9 for two reasons. First, by deciding to waive its privilege as to Exhibit 9, Norac produced information that otherwise had been made known already to the other parties during the discovery process. Exhibit 9 contains no new substantive information that bears on the merits of this litigation because previously Norac produced Exhibits

5B, 5C, and 5D to plaintiffs, with Exhibit 5B bearing a date and the heading "Memo to File from Wally McCloskey" consistent with Exhibit 9.[2]

Further, Norac's failure to produce Exhibit 9 prior to the discovery deadline did not prejudice plaintiffs. Plaintiffs had in their possession throughout the discovery process Exhibits 5B, 5C, and 5D about which plaintiffs could have inquired of any of Norac's witnesses and about which plaintiffs could have posed follow-up written discovery requests. The Court will not strike Exhibit 9, but the Court does not need to consider, rely on, or reference Exhibit 9 when concluding that summary judgment should be entered in Norac's favor on plaintiffs' retaliation claims for the reasons that follow.

### III. Summary Judgment Standard Of Review

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Incorporated v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence

---

[2] The Court also notes that, in the *Jackson* case, plaintiffs' counsel here represented Ms. Jackson in that litigation. In *Jackson*, plaintiffs' counsel deposed Michael Connor, President of Norac (Case No. 2:14-cv-00125-DPM, Dkt. No. 26-1). Mr. Connor was asked about the reduction in force that lead to the termination of Ms. Jackson, Ms. Valerie Lacey, and Ms. Rose (*Id.*, at 18-19). His sworn deposition testimony is consistent with the dates and substance of Exhibits 5B, 5C, and 5D to this suit.

could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**IV.     Analysis Of Retaliation Claims**

Ms. Valerie Lacey and Ms. Ry'Kia Lacey both allege retaliation claims under Title VII and the ACRA. Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice [by Title VII] . . . or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e-3(a). Similarly, the ACRA prohibits employers from "discriminat[ing] against any individual because the individual in good faith has opposed any act or practice made unlawful by this subchapter or because the individual in good faith made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Ark. Code Ann. § 16-123-108(a). "[R]etaliation claims under the ACRA are analyzed under the same substantive standards as

retaliation claims under Title VII." *Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 716 (8th Cir. 2012) (internal citations omitted).

Norac seeks judgment as a matter of law on plaintiffs' retaliation claims under Title VII and the ACRA. For the following reasons, the Court grants Norac summary judgment on these claims.

### A. Ms. Valerie Lacey's Retaliation Claims

Ms. Valerie Lacey has alleged that Norac retaliated against her because she refused to sign an affidavit concerning another former Norac employee's Title VII case. To avoid summary judgment on her retaliation claims, Ms. Valerie Lacey must present "direct evidence" of retaliation or follow "the burden-shifting analysis set forth in *McDonnell Douglas* . . . ." *Williams v. Tucker*, 857 F.3d 765, 769 (8th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* framework, a plaintiff must "set forth a prima facie case in order to shift the burden of producing a legitimate, [nonretaliatory] reason for the employment decision to the employer." *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 964-65 (8th Cir. 2006). If the employer provides a nonretaliatory reason, then the employee must "present evidence that (1) creates a question of fact as to whether [the employer]'s proffered reason was pretextual and (2) creates a reasonable inference that [the employer] acted in retaliation." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833-34 (8th Cir. 2002) (internal citation omitted).

#### 1. Ms. Valerie's Lacey's *Prima Facie* Case

Ms. Valerie Lacey bears the initial burden of establishing a *prima facie* case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to her protected

conduct. *Williams*, 857 F.3d at 769 (quoting *Graning v. Sherburne Cty.*, 172 F.3d 611, 615 (8th Cir. 1999)). "[T]he threshold of proof necessary to establish a *prima facie* case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998). The Supreme Court has held that retaliation claims brought under Title VII must be proved according to traditional principles of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Musolf v. J.C. Penney Company*, 773 F.3d 916, 919 (8th Cir. 2014).

Ms. Valerie Lacey has not presented any direct evidence of retaliation; thus, her claims of retaliation are analyzed under the *McDonnell Douglas* burden-shifting framework. Norac argues that her retaliation claims fail because the evidence shows that the decision to terminate her was made in September 2014, two months before she refused to sign the affidavit in *Jackson*, and therefore, she cannot establish a causal relationship between her refusal to sign the affidavit and her termination (Dkt. No. 16, at 3-5). She retorts that the evidence proffered by Norac is undated, unreliable, and inconsistent, and therefore insufficient to rebut her *prima facie* case of retaliation (Dkt. No. 21, at 2-3).

Ms. Valerie Lacey argues that she was terminated because she refused to sign an affidavit offered to her by Norac's counsel (Dkt. No. 21, at 1-2). Her refusal to provide Norac with an affidavit concerning an employment discrimination case is protected activity. *See Smith v. Columbus Metro. Hous. Auth.*, 443 F. Supp. 61, 64 (S.D. Ohio 1977). As evidence that her refusal to sign the affidavit was the but-for cause of her termination, Ms. Valerie Lacey points to the temporal proximity between the two events (Dkt. No. 21, at 2). Specifically, she was terminated less than one month after refusing to sign the affidavit (*Id.*). Temporal proximity between a protected act and termination sometimes establishes a *prima facie* case of retaliation, *see Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 741 (8th Cir. 2017); *Smith*, 302 F.3d at 833 (two week

9

proximity establishes but-for causation); *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001) (temporal proximity of a "matter of weeks" was sufficient to establish causation). In this case, Ms. Valerie Lacey refused to sign the affidavit offered to her by Norac's counsel in November 2014 (Dkt. No. 21, at 1). She was discharged on December 2, 2014 (Dkt. No. 17, ¶ 9). Since these two events are close in time, this Court determines that these facts are sufficient, though barely so, to establish causation sufficient to satisfy the *prima facie* case requirements. The Court concludes that Ms. Valerie Lacey has established her *prima facie* case of retaliation sufficient to survive summary judgment.

### 2. Norac's Nonretaliatory Justification For Discharging Ms. Valerie Lacey

Since Ms. Valerie Lacey has established a *prima facie* case of retaliation, the burden shifts back to Norac to articulate a legitimate, nonretaliatory reason for discharging her. Norac contends that it "decided in September 2014 to reorganize it [sic] Helena front office and reassign certain job duties at its Arkansas facility to its employees in California." (Dkt. No. 16, at 4). According to Norac, the decision to terminate Ms. Valerie Lacey's employment was made in September 2014, solely for business reasons.

In support of this contention, Norac offers Exhibits 5-B, 5-C, and 5-D (Dkt. No. 15-5, at 3-6). Plaintiffs in their depositions suggest that these documents were fabricated because at least two of them are undated; plaintiffs appear to challenge their authenticity. Although plaintiffs do not address this issue in their motion to strike, a document that has not been authenticated cannot be considered in connection with a summary judgment motion. *See, e.g., DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach,* 576 F.3d 820, 825-26 (8th Cir. 2009) (quoting *Shanklin v. Fitzgerald,* 397 F.3d 596, 602 (8th Cir. 2005)). "Federal Rule of Evidence 901(a) provides that the requirement of authentication is satisfied by 'evidence sufficient to support a finding that the

10

matter in question is what its proponent claims.'" *Jones v. National American University,* 608 F.3d 1039, 1045 (8th Cir. 2010). "The party authenticating the exhibit 'need only prove a rational basis for that party's claim that the document is what it is asserted to be.'" *Id.* (quoting *United States v. Wadena,* 152 F.3d 831, 854 (8th Cir. 1998)). "This may be done with circumstantial evidence." *Id.* (quoting *Wadena,* 152 F.3d at 854); *see also White v. Smith*, 808 F. Supp. 2d 1174, 1180-81 (D. Neb. 2011), *aff'd*, 696 F.3d 740 (8th Cir. 2012). Examining the record before it, the Court is satisfied that Exhibits 5-B, 5-C, and 5-D are authentic and able to be considered by this Court in regard to Norac's motion for summary judgment.

Exhibit 5-B is a memo drafted by Norac's owner, Wally McCloskey, which states, "[W]e will move most of Norac's accounting activities that are handled in our Helena, Arkansas plant to California." (Dkt. No. 15-5, at 3). This memo is dated on September 18, 2014 (*Id.*). Exhibit 5-C is an undated document which reads, "It is our feeling that the duties that will remain in the Helena office would best be performed by Wendy, Pam and Kristin." (*Id.*, at 4). Furthermore, Exhibit 5-D is an undated printout that describes which employees have which responsibilities and to whom those responsibilities were being reassigned (*Id.*, at 5). According to Exhibit 5-D, the duties assigned to Ms Jackson, Ms. Valerie Lacey, Ms. Rose, Ms. Payne, Ms. Fletcher, and Ms. Gregory were being reassigned to only Ms. Payne, Ms. Fletcher, and Ms. Gregory (*Id.*). The implication, of course, is that Norac planned to terminate Ms. Jackson, Ms. Valerie Lacey, and Ms. Rose.[3]

---

[3] Attached to its reply, Norac offers the affidavit of its owner, Mr. McCloskey, who avers that Exhibits 5-B, 5-C, and 5-D were created in September 2014 and identifies Ms. Jackson, Ms. Valerie Lacey, and Ms. Rose as the individuals Norac planned to terminate (Dkt. No. 23-1, ¶ 4). Plaintiffs did not move to strike the Court's consideration of this affidavit. Further, plaintiffs did not seek leave to file a surreply to address matters raised by Norac in its reply. The Court need not consider, rely on, or reference Mr. McCloskey's affidavit when concluding that summary judgment should be entered in Norac's favor on plaintiffs' retaliation claims for the reasons explained.

The Court concludes that Norac has established a nonretaliatory justification for Ms. Valerie Lacey's termination.

### 3. Ms. Valerie Lacey's Evidence Of Pretext

In order to raise an inference of pretext, Ms. Valerie Lacey implies that Norac's Exhibits 5-B, 5-C, and 5-D raise a material issue of fact as to "which method was actually used" to determine which employees were fired (*see* Dkt. No. 21, at 3 ("the only evidence that supports that date is a document attached to the Motion . . . .")). Ms. Valerie Lacey argues that Norac has repeatedly changed its proffered explanation for why she was chosen for termination (*Id.*, at 2-3). Ms. Valerie Lacey points to the testimony of Norac's president, Mike Connor, who stated that the December 2014 layoffs occurred because more personnel became available in California (*Id.*, at 3). She also claims, without citation to the record, that Norac's layoff decision was based on "people not positions." (*Id.*). Finally, Ms. Valerie Lacey contends that Exhibit 5-D does not accurately reflect how job duties were actually reassigned after the layoffs, thus raising the inference that Exhibit 5-D was created by Norac as a pretext (*Id.*). She concludes that, taken together, this evidence raises a question of fact as to why she was included in the layoffs (*Id.*).

Even viewing Ms. Valerie Lacey's rebuttal evidence in the light most favorable to her as the Court is required to do, the Court finds that the evidence before it does not raise a genuine issue of material fact regarding Norac's proffered justification for her termination. First, the Court notes that Norac's Exhibit 5-B—which is dated September 18, 2014—clearly contemplates layoffs at Norac's Helena facility (Dkt. No. 15-5, at 3). Although she speculates in her deposition, Ms. Valerie Lacey has offered no proof to suggest that Exhibit 5-B was postdated. At the summary judgment stage, Ms. Valerie Lacey is required to do more than speculate. Furthermore, Exhibits 5-C and 5-D clearly show that Norac intended to fire Ms. Jackson, Ms. Valerie Lacey, and Ms.

Rose (*Id.*, at 4-5). While these two exhibits are undated, the exhibits refer and relate to matters raised in Exhibit 5-B, which is dated and pre-dates the events surrounding Ms. Valerie Lacey's refusal to sign the *Jackson* affidavit. The authenticity of these exhibits is further buttressed by the fact that the individuals identified in the exhibits as candidates for termination were in fact terminated (Dkt. No. 15-3, at 6). The Court also notes that Norac asked Ms. Payne to sign an affidavit, she refused, and yet Ms. Payne was not fired (*see* Dkt. No. 21-2, at 19-20). At the same time, Norac asked Ms. Rose to sign an affidavit, she did, and she still was fired (Dkt. No. 15-3, at 23).

Further, after reviewing the deposition testimony of Ms. Payne, the Court is convinced that the job duty descriptions in Exhibit 5-D were generally accurate (*Id.*, at 24-29). To the extent they were not, those discrepancies do not call into question the overall validity of Exhibits 5-B, 5-C, and 5-D or the reason Norac offers for why Ms. Valerie Lacey was terminated (Dkt. No. 15-5, at 4-6). Norac decided to move some administrative duties from Helena to California and, therefore, did not need as many employees in Helena. Ms. Valerie Lacey has not shown through record evidence that a prohibited reason more likely than not motivated Norac's decision to terminate her. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015).

There is no evidence before this Court suggesting that Ms. Valerie Lacey's refusal to sign an affidavit was the reason for, or even a contributing factor in, the decision to terminate her employment. As a result, Norac is entitled to judgment as a matter of law on Ms. Valerie Lacey's claims of retaliation under Title VII and the ACRA.

### B. Ms. Ry'Kia Lacey's Retaliation Claims

There is no evidence before this Court to suggest that Ms. Ry'Kia Lacey was an employee of Norac, so Norac is entitled to summary judgment on Ms. Ry'Kia Lacey's retaliation claims

13

under Title VII and the ACRA. "The law is well established that Title VII protects employees, not independent contractors, from discriminatory employment practices." *Hunt v. State of Missouri, Dept. of Corrections*, 297 F.3d 735, 741 (8th Cir. 2002) (citing *Schwieger v. Farm Bureau Ins. Co.*, 207 F.3d 480, 484 (8th Cir. 2000)). Similarly, retaliation claims under the ACRA must "aris[e] out of the employee-employer relationship . . . ." Ark. Code Ann. § 16-123-108(c)(2). "Determining whether a party is an employee or an independent contractor . . . requires a fact-intensive consideration of "'all aspects of the working relationship' between the parties." *Hunt*, 297 F.3d at 741 (quoting *Wilde v. County of Kandiyohi*, 15 F.3d 103, 104 (8th Cir. 1994)); *Gilzow v. Lenders Title Co.*, No. 05-5091, 2006 WL 522472, at *3 (W.D. Ark. Mar. 3, 2006) (ACRA requires fact intensive inquiry) (citing *Blankenship v. Overhold*, 301 Ark. 476 (1990)). Notably, an employer "may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship." *Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 81 (8th Cir. 1996), *cert. denied*, 520 U.S. 1211 (1997).

Here, Norac has presented evidence that Ms. Ry'Kia Lacey was a temporary employee while she worked at Norac (Dkt. No. 15-4, at 11). Ms. Ry'Kia Lacey answered in the affirmative when asked if she worked for a temporary staffing agency that placed her with Norac (*Id.*). She also testified that, while working at Norac, she received her paycheck from a temporary staffing agency (*Id.*, at 12). She further stated that it was her understanding that her job at Norac was a temporary assignment (*Id.*, at 19). Ms. Ry'Kia Lacey has failed to point to any evidence in the record to indicate that she was a permanent employee of Norac. Even drawing all reasonable inferences in favor of the non-moving party, the Court finds that Ms. Ry'Kia Lacey was a temporary employee and, therefore, not protected by Title VII or the ACRA. Even if Ms. Ry'Kia Lacey was entitled to the protections afforded by Title VII and the ACRA based on the position

she held, because the Court has ruled that Ms. Valerie Lacey's retaliation claims do not survive summary judgment, Ms. Ry'Kia Lacey's retaliation claims, which are premised on her relationship to Ms. Valerie Lacey, do not survive summary judgment. Accordingly, the Court grants Norac judgment as a matter of law on Ms. Ry'Kia Lacey's retaliation claims under Title VII and the ACRA.

**V.  Conclusion**

Norac's motion for summary judgment as to Ms. Valerie Lacey and Ms. Ry'Kia Lacey's retaliation claims is granted (Dkt. No. 15). Ms. Valerie Lacey and Ms. Ry'Kia Lacey's action is dismissed with prejudice; the relief requested is denied.

So ordered this the 30th day of March, 2018.

Kristine G. Baker
United States District Judge